Attorney, Amy Field, on behalf of two retired LAPD detectives, Andrew Monsoo and Howard Landgren. I'd like to reserve five minutes of my time for rebuttal, and I'd like to start my argument with the constitutional question as opposed to the immunity question. Well, is that question before us? Yes, it is, Your Honor. I thought the only appealable order was the order denying immunity. Your Honor, my understanding of both sides of the brief, the issue is much like a qualified immunity analysis when a defendant raises absolute witness immunity under Payne v. City of Lompoc and Cunningham v. Gate, the court is entitled to also consider whether there's sufficient evidence to sustain the underlying constitutional claim. Well, but what stage of this case are we at? Summary judgment. Right. And there is evidence was submitted. I mean, this is why I'd rather you concentrate on the immunity claim, because I'm operating from a pretty strong assumption that if the evidence submitted by the other side is true, a constitutional violation has been made out. In other words, that the officers, according to the other side, there's never been a trial submitted consciously false police reports in order to help implicate the plaintiff in this case. And I'm willing to listen to that argument, but I think your time's better spent on the immunity argument. I do it how you want, but I'm — No, you — I think the bench is interested in immunity. Okay. Let's talk about immunity, Your Honor. I think the law is absolutely clear. I think there's a little bit of overlap between the two questions. I think the law is absolutely clear. The Supreme Court just recently has made absolutely clear that absolute witness immunity not only encompasses a witness's false testimony at trial, but also encompasses the preparatory activity in anticipation of the testimony at trial. So could I stop you there? Because it seems to me the briefing — of course, the opposing counsel is going to get up and say, the logical extension of your argument is that no matter how egregious the regular conduct is, as long as you put somebody on the stand, that it's all somehow immunized. Is that really your position? No. That's not my position at all, Your Honor. Where would you draw the line, then, counsel? I would draw the line at when, in pretrial, a witness fabricates a discrete piece of physical evidence. They coerce a witness's testimony. They plant evidence on someone. None of this happened here, Your Honor. Where's the evidence — excuse me — where's the authority that it has to be a discrete piece of physical evidence that's planted, or a witness whose testimony is coerced? Where is that? Do we have authority that draws that line there? I believe that Payne v. City of Lombok draws that line. I believe that Rehberg draws that line. I believe that Franklin v. Tehr draws that line. In every case where the pretrial conduct is not immunized has involved exactly that, Your Honor. Let's change the facts in this case a little bit. Let's assume that your clients, instead of writing down things that are alleged to have been false, went to the prosecutor and said, I saw the crime committed. I was there and I saw the plaintiff in this case commit the crime, and then committed that to their police report, and then what ensued, ensued. Would the act of lying to the prosecutor about having witnessed the crime be immunized? It's not a physical evidence. See, what's really happening here is people are looking at the scene and saying, here's what I saw at the scene. So I'm trying to give you one at the scene where your clients directly say, I saw the crime committed, falsely. Tell the prosecutor that. Prosecutor brings the case. What ensues, ensues. Is the act of lying to the prosecutor about having seen the crime immunized because it's preparatory to eventual testimony? I'm not sure about that. I think that's a hypothetical that's so far afield. Well, no. It's exactly what happened here. No, Your Honor. It's exactly what happened here. So with respect to the crime scene, the allegation is that your clients lied about what they saw, told the prosecutor that in a police report, and that eventually led to their testimony at trial. So if you think there's immunity in that circumstance, I'm more impressed to think why you don't think there's immunity in this one. So it's not that far afield. So you can go back to it. I'd like to explain. I'd like to answer the court's question because I think this is really important about what the facts are in this case. What was the evidence in this case? The evidence in this case were the photos of the crime scene, which these detectives collected and preserved. They preserved it in such a way that this evidence was available to Mr. Lisker 26 years after his trial. Counsel, now are you speaking of the photographs taken not on the day of the crime, but later when they came back with the photographer? I'm talking about the photographs taken at the crime scene. What day? When, ma'am? The photographs taken at the crime scene when it was still a crime scene, the day of the murder. That's what I'm talking about, Your Honor. Because there are two sets of photographs here, are there not? That's correct. That's correct. What Judge Hurwitz's question went to is their narrative description of what they saw. And their narrative description of what they saw, it's, here, Mr. Prosecutor, here's the evidence we've collected. Here's a photograph of the picture of the footprints in the mud on the side of the house. We look at these footprints and we see them going in one direction only. Well, that's the evidence in the light most favorable to your clients, and they may well prevail at trial. But the evidence in the light most favorable to the party that lost on the immunity question, to the other side, I'm sorry, is that your clients made up what they saw through the window. Or couldn't see. Or couldn't see through the window. Didn't tell the prosecutor that there were other footprints, and there's a whole variety of things in the brief. So this may all be explainable. It may all be, it may be that they did great police work and didn't tell, and these were all irrelevant lapses. But for purposes of summary judgment, we have to assume that your clients knowingly either misrepresented what they saw or omitted from what they saw pretty relevant information. In terms of the weather. Yeah. So given that, I mean, you're a great lawyer and you may convince the jury that none of this was a bad thing, but for our purposes, don't we have to assume that's all true? No, your honor, I don't. I mean, they have to have competent evidence to base their allegations on, and the undisputed evidence here is what was in those pictures. Are you saying it's undisputed that there was only one set of footprints? No. Are you saying it's undisputed that they could not see through that window because of the weather conditions? I'm saying it's... Aren't those disputed facts? The evidence is what it is. The evidence is... Yeah, and it is disputed, isn't it? The evidence is what it is, and it is disputed, is it not, as to what they could see, what they did see? It's undisputed what the evidence was at the crime scene.   And if they were going... Are you saying it's undisputed that there was only one set of footprints? No. You know, I'm not a police officer. A police officer's job is to collect the evidence and lend his or her interpretation of what that evidence means to them, why it supports probable cause to them. They didn't fabricate those photographs. Those photographs were what they were. Counsel, it's about their description, their narrative description of their observations and of the crime scene, and I well appreciate that your position is that their observations may have been wrong, may have been mistaken, and that there's a big difference between fabricating evidence and making a mistake. Absolutely appreciate that. What we're trying to hone in on is that this is a summary judgment ruling and the facts are going to be construed in the light most favorable to the opposing party. That's where we sit today. See, it may even be true that the photographs by themselves were enough to establish probable cause, but that's not what we're here about. What we're here about is whether or not the alleged fabrication or deliberate omission of evidence occurred so closely connected to your client's testimony at trial that it's subject to immunity, or whether or not it is discreet enough, to use your words, that it can be the subject of a lawsuit in which they do not get this kind of immunity. So that's why I asked you at the beginning, and it's not an easy issue, and that's why I asked you to focus on it for us, because we could use some help on that issue. I think Judge Christian is exactly right. There's a huge difference between deliberately fabricating evidence. Deliberately fabricating evidence is tampering with the physical evidence, making a mistake, making a... Whoa, whoa, whoa. Just one moment. Are you saying that telling a lie is not fabricating evidence, that it has to be physical in order to be fabricating evidence? Is that your position? I didn't say that deliberately fabricating evidence is creating evidence. These officers... Are you saying that it has to be physical evidence? It can be physical evidence. It can be evidence that a police officer has put words in the suspect's mouth, attributed statements to him that he never made, but we don't have any of that. If the police officer makes a false statement to the prosecutor who's making the prosecutorial decisions, is that not fabricating evidence? If they have a false statement about what he saw or could not see at the scene. In other words, not just an incorrect statement, but a misleading, a wrong... But false. Deliberately false. Right. I don't see how you can find, if I say, here's the photograph of the muddy footprint... That's not what I... Did I ask you anything about footprints? You understand I'm asking you, if an officer deliberately makes false statements to the prosecutor about what he saw or could not see, is that not fabricating evidence? Give me an answer that does not include footprints. Don't narrow it to this case, just tell me whether that concept is or is not fabricating evidence. I think that would be fabricating evidence. And that's why I asked you before if an officer just said, I saw the guy at the scene committing the crime, no physical evidence, that would be fabricating evidence too if he made it up, wouldn't it? Okay, so in this case, the allegation is, and I really want you to get back to immunity, your time. The allegation is that your clients fabricated evidence by saying what they saw through the window when in fact they didn't see it. Leave the footprints aside for a second. Why is that, if that's true, why are they entitled to immunity for that fabrication? I assume there's a fabrication. I know you think there isn't. Why are they entitled to immunity for that fabrication? Because that statement in the police report, the only way it became evidence and supposedly caused injury to Mr. Lisker was when it was admitted against him at his trial. And now we're getting to the issue I'm interested in, so thank you. The prosecutor gets that police report and says, hmm, this is a case worth prosecuting. I have a good case. I have a lot of evidence here, and makes a decision to prosecute. I think the allegation is, we don't know whether they can prove it up or not, is that injured the plaintiff in this case? Because had the prosecutor been told the truth, further investigation might have ensued and  Why isn't that an injury? Your office, I know that you're a line prosecutor, prosecutors' offices use police reports all the time to determine whether to charge. They're very important documents. So why doesn't that cause an injury? Well, you're narrowing it to just that statement, and that's not what the prosecutor had here. And you may be able to prove that at trial, but that's a question of immunity we're talking about now. You're saying its only use was at trial, and I'm saying it was used before, wasn't it? The so-called fabricated statement. This is my response, Your Honor. Rieberg says it's okay for a police investigator to have a preparatory conversation with the prosecutor where he says, this is the evidence I collected. This is how I interpret the evidence. This is why I believe the suspect is guilty. That's okay. That conversation is okay. It's covered by absolute witness immunity. Why would it be any different if a police officer commits these same... And now you're on to the issue that's the difficult one in this case, and it's the one I've been trying to steer you to, because... Actually, I think all three of us. Yeah, all three of us. I don't think we will accept as true that your clients fabricated evidence in this case. So the question is, does it matter? Because they took the stand and testified about that. That's the issue we have to resolve. Right. So it goes back to my first question of where you draw the line, and you said that there isn't physical evidence here. I asked you about authority, and you said in other cases where immunity has been denied, there was physical evidence that was fabricated or evidence that was planted or witnesses that were coerced. And I will certainly grant you that those are easier cases, and in those cases their immunity has been denied. But we have a harder case here, as we've been discussing this morning, because there could have been... It could be that there were mistakes made in the officer's description of the crime scene, or it could be, and we are required today to assume, that the officer's descriptions were intentionally inaccurate. And so I'm trying to figure out whether there's any authority for your view that under these circumstances that qualified immunity is available to them. Is there any authority for that? Well, my authority, again, would be the Supreme Court's decision in Reber v. Pauk, the Ninth Circuit's decision in Franklin v. Dare. I mean... So it seems to me that what you're saying is because in those other cases there was planted evidence or coerced witnesses, what you've translated that into is a necessary prerequisite. That, and also the other part of those cases, the two I just mentioned, is that absolute witness immunity extends to witnesses getting together and say, let's conspire to prevent false evidence against the defendant. It extends to that. Under Reberg, it extends to a police officer, it says, having conversations with the prosecutor about his intended testimony. Why wouldn't it extend to the officer committing, giving a preview of his testimony in a report? Don't we want that? I think you've answered my question the best you can, and I appreciate it. I'm going to... You're well over your time, so I'm going to hear from the opposing party, please. Thank you. Good morning, Your Honors. Barry Wood on behalf of Mr. Whisker. So let me start with the fact that the hypothetical that was asked of Ms. Fields, which was if there's an intentional lie, is that a fabrication, to which she answered reluctantly yes, I think resolves this issue. I'm not sure it does, and this is why I'm having some difficulty. So let me take you back to where we ended with your opponent. Okay. Let's assume a slightly different set of facts here. The officers don't write all this down in a report. The prosecutor just says, I'm thinking about prosecuting this guy for murder, and I want to have a grand jury listen to it. What did you guys come up with on the scene? And they report exactly what they put in the report. And then he says, okay, let's go to the grand jury, tell them that. That's pretty close to Rieberg, isn't it? I don't think it is. Here's why. Rieberg makes very clear that at common law, a complaining witness did not have immunity, period. There was not witness immunity for a complaining witness. So to begin with, the detectives here qualify under Wyatt and under Payne, and the discussion of what constitutes a complaining witness, that they are complaining witnesses because they classically were the engine that started this prosecution and investigation. So Rieberg is very clear that you don't even really need to get into an absolute immunity analysis, and Rieberg did not involve someone who qualified as a complaining witness. Where you have a complaining witness, and that's been the law in this circuit for a long time, was the law before Rieberg, and nothing in Rieberg changed that. If anything, Rieberg reinforced that. So I think that that's really important, and it's really important that the defendants have never really taken on the complaining witness issue, including in their reply, even though we focused on it significantly in our brief and discussed Rieberg at length. Even if you leave aside... I was just going to ask you to leave that aside, so go ahead. If you leave aside the complaining witness issue, then the question becomes, you would need a little more information to answer the question. Here's the line. The line is not a line between whether you write a false report or whatever. The line is between whether all you do is talk to the prosecutor or to others about your testimony or a conspiracy to fabricate testimony and nothing more, as opposed to whether or not you engage in other activity which plays a material role in causing the... So is it here, in your view, is it the preparation of the report? In other words, if these two detectives had gotten together on the scene and said, we don't like the looks of this kid, let's make up a bunch of evidence, and they made it all up but didn't put it in a report, were conspiring to have him convicted, would that... and then went on the stand and completed the conspiracy. In other words, they began the conspiracy earlier than some of the people in the other cases. Would that qualify for immunity? No. In practice, what this really means is that it usually happens in the investigative phase, and in Rayburg, the Supreme Court was very clear in the footnote where it said, we don't apply this analysis to all activities and talked about investigative activity. It talked about false affidavits in the investigative phase. So usually this breaks down into one of two ways if you look at the cases. One is investigative phase activity that then is provided to the prosecutor as part of then the prosecutor's assessment of whether or not to prosecute. When you have that, which is what we have here, immunity does not apply, and you can't relate back the fact that the same evidence was testified to, excuse me, retrospectively sort of immunize this separate conduct. Counsel, we have a lot of authority that sets out policy reasons that you're very familiar with for granting immunity to witnesses and for protecting police officers who are going to be doing this kind of investigative work. And I think opposing counsel makes strong arguments about the fact that viewed in one light, what the report does is actually memorialize some of the errors that may have been made that ultimately led to your client's release. It's not as though there was a narrative that the footprints went one way and there were only photographs showing the footprints going one way. There are photographs showing the footprints going two ways, and what that convinces me of is that the police officers were perhaps wrong. But there's a big difference between being wrong and falsifying evidence. So my question is, in light of the strong reasons in favor of immunity in these situations, what's the strongest evidence you've got to show that these were not just mistakes, but actually that there were intentional misrepresentations? Well, there are several things that it's important to note. First of all, the whole description of the sun and the glare. Detective Monceau admitted in his deposition that despite stating specifically in the police report that they did that crime scene investigation in the morning, that in fact he called Langren in the afternoon and it was done in the afternoon. Could I ask you how many years later was it when he was deposed? It was many years, 20-some. But he didn't equivocate. He was very clear about that. That's your strongest evidence? No. I was asking for your strongest. Because you have limited time, start with the strongest and then go down to the weakest. Probably the strongest single piece of evidence is that they misplaced the body. Well, and they came back a couple weeks later or 10 days later to have the professional photographs taken. They had a model lay on the floor. You're speaking of that. Yes. So how do we know they weren't just wrong? Pardon me? How do we know they weren't just mistaken where they told her to lie down? But it goes back to what you said before. That's for the jury. The law is very clear. We didn't brief it because it wasn't asked. But state of mind is almost never a proper basis for summary judgment because if you have facts from which a trier of fact can infer a state of mind, we have... But counsel, we're familiar with those authorities. But here's the problem. Immunity is... In the sense that we're talking about, this is immunity from suit. These folks don't want to have to go to trial, and their argument is going to be that if they have to go there, they've effectively lost the benefit of the immunity. So we need more. The law typically demands more. And that's why I'm asking, what's your best shot? Well, look, you have to put all this together cumulatively. The fact that a lawyer could have hired an expert and disputed what they said really isn't the issue. There is no... Systematically, they falsified evidence. They said that there was only one type of shoe prints. There were two. They said that there were not shoe prints matching Mr. Lisker's shoes that went back and forth when there were. They said that the bloody shoe prints match Mr. Lisker. They did not. They said that Michael Ryan had been cleared. He had not. I mean, now, if you isolate each one of those and say, well, does that by itself prove what their state of mind was? No, but when you put all of that evidence together along with a false reconstruction of the crime scene and systematically false evidence, false evidence about what the weather conditions were, when you take it cumulatively, there is far more than the evidence that would be needed for that to be a matter for the jury to decide. So where do you draw the line between the conduct that is subject to immunity and the conduct that's not? We've been dancing all day around this putting somebody on the witness stand and how far back does that go? I think that the line really is what was discussed in Rayburg. There are two things that are immunized, testimony and direct preparation to testify, actually three, direct preparation to testify and a conspiracy where your only conduct is to discuss how you're going to falsely testify. That's what's immunized and that's what the cases say. Anything else, and so as soon as you get into the investigative phase conduct, this is not immunized conduct. Now there may not be anything wrong with it, but obviously here we're claiming that there was something wrong with it. So that's where I would draw the line. I think the line really is, and I think the Supreme Court said this in Rayburg, the line really is that generally you don't have immunity and so you define the limited circumstances in which immunity applies. I think the defendants try to go about it from the other way. They sort of start from the premise that as long as you testify it's immunity and so you have to figure out why it's not. But really that's not what the Supreme Court has said. I wanted to ask you a question about, the district court found that there was sufficient evidence to go to the jury on the merits of the claim, assuming no immunity. Is that issue in front of us? I asked your opponent that question at the beginning and I'm still having some difficulty thinking that the merits are in front of us. That order by the district court is unreviewable. The immunity order is reviewable. So do we, even if we thought there wasn't enough evidence to go to the jury, would we still only be looking at the immunity issue? I think so and here's why. I've never seen any, when qualified immunity is discussed, there are two elements to qualified immunity. Was the law clearly established and was the conduct unconstitutional? Those are the two prongs of a qualified immunity inquiry. Any case that discusses absolute witness immunity, I've never seen a case where they address whether or not the conduct was constitutional or not. Obviously it usually arises in circumstances because it's not an interlocutory appeal where there are other issues so they may address it. But the absolute immunity analysis itself has never, in any cases that I can recall, asked the question of whether or not the underlying conduct was or wasn't constitutional. I'm not sure you're quite answering our question. The immunity question is before us. Does that bring other issues in the case with it that we should be deciding as well? I do not believe that. I think the only issue before you is whether or not the conduct here is immunized and I don't think that the sufficiency of the evidence, I mean I'm satisfied that if you get to the sufficiency of the evidence or you think it's relevant, it doesn't change the outcome, but I don't think for purposes analytically of what the issue before you is that the absolute immunity inquiry entails an inquiry into whether or not. There are cases that say that where a case arises, an appeal arises on an interlocutory basis on an issue that the appeals court can then decide other issues which are intertwined with the issue that is, for example, certified for appeal and certification or is appealable in some other context. Does that, A, authorize or, B, compel us to look at any other issue, in this case, than the immunity issue? Well, I certainly don't think it compels you to. Whether or not it authorizes you to, I mean, in reality, if you decided to do it, I don't think anybody would. Is there anything I could do about it? Good answer, yes, Counselor. Inability of the parties to fix our mistakes is not justification for them. I'd say a little higher than that. But for the reasons that I explained, I don't think it's really necessary because really the issue of whether it's false or not, all the cases that discuss it just don't get into whether it's false. They just say, was this immunized conduct? They just don't get into, none of the cases really get into analyzing the merits of the falsity. Okay, so Judge Kristen asked you before, and I'd like to ask you again, if you had to give a one-sentence response to where the line is drawn between conduct preparatory to testifying, which the Supreme Court tells us is immunized, and conduct not immunized, what would it be? It would be that a discussion with the prosecutor and a discussion with a co-conspirator limited to your testimony itself and no other reports, activities, investigative conduct, or anything else. That's what it would be. That's where the line is. I have 30 seconds left, but unless you have something else you want me to address, I'll... Thank you, Counselor. Thank you. Would you please put another minute and a half on the clock? We hardly let you get a word in at all. I'm used to that, Your Honor. Thank you. I just want to make a couple of quick points as to why the witness immunity should extend back to the statements that were in the reports. I think when you look at the policy behind absolute witness immunity, which is to encourage witnesses to be candid about what they saw, what they observed, what their interpretations were, without constantly looking over their shoulder and fearing that they're going to face civil liability down the road, I think that those policy reasons apply equally to an officer's basically previewing what they're going to say in trial in their police report. We want police officers to be candid about what they saw, what they observed, how they interpret the evidence. It benefits the criminal defendant because then there's no surprise that the criminal trial, they know the officer is committed to what their interpretations of the evidence are. Right, and they're certainly subject to cross-examination, of course, but can you tell me about the, at least they're not on the grand jury, but at trial, but can you tell me about your response to the, seems to me, objective evidence about whether it was a sunny day or a cloudy day, whether there was glare preventing them from seeing inside. What's your response to that? Well, first of all, I'd like to point out that in the record, in the habeas proceedings, I don't believe that Mr. Lisker's experts ever refuted the officer's testimony about the glare on the windows. I think that's a really common experience. We all know that when it's light out outside, you have to peer into a window and cup your hands against the window to see in. But as to the weather conditions, I think that's just like everything else. The weather is what it is. You know, how one person interprets a sunny day is different than how another one. My daughter lives on the East Coast. I tell her it's cold outside today in California. She laughs at me. You don't know what cold is. You don't know what cloudy is. I'm experiencing it. So it's like a subjective interpretation of the evidence. They could have done the same thing that they did 26 years later, called experts, checked the meteorology reports, things like that. That's not a fabrication of evidence. Can I ask you one more, with the court's presiding judge's permission? Let's assume this case never went to trial. Everything occurred exactly the same as before. The criminal case? Yeah, never went to trial. But the plaintiff was arrested, spent some time in jail waiting trial, and then the prosecutor said I'm not going to bring the case because I'm too busy or I found some other thing. So no testimony here to think about. Would the fabrication, and I'm not asking you to agree there was a fabrication, would the fabrication of a police report that led to the arrest of the defendant give rise to a 1983 claim? I'm trying to take the witness immunity out of it at the far end. That act alone, could there be a 1983 claim about it? Right, Your Honor. I think that's an excellent question because it could be, but I think it would be measured against if you took the supposedly fabricated statement out. Right. I'm asking you to assume terrible fabrication, just for purposes of that. Just made up. But you do agree that the police report itself, if falsified under different circumstances than you think occurred in this case, could give rise to a 1983 claim? If the defendant were arrested on the basis of it? It could give rise if the rest of the facts did not in and of themselves support probable cause. And I'd also like to point out that the plaintiff abandoned his cause of action having to do with the wrongful institution of the proceedings. He dismissed his malicious prosecution claim, I assume because he knew he couldn't meet the elements. Counsel, you're well over your time. Thank you very much for your arguments, both of you. And we'll submit.
judges: Sentelle, Christen, Hurwitz